UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK ALAN MASON,<br>Petitioner | : | CIV. NO. 3:03CV692(PCD) |
| v. | : | |
| WARDEN STRANGE, ET AL.,<br>Respondents | : | NOVEMBER 19, 2003 |

### RESPONSE TO COURT'S SHOW CAUSE ORDER DATED OCTOBER 27, 2003

This response is filed in accordance with this court's October 27, 2003 order to the respondent to show cause "why the petitioner should not be excused from exhausting his state court remedies and addressing the petitioner's claim that `(i) there is an absence of available State corrective process or (ii) circumstances exist that render such process ineffective to protect the rights of the [petitioner].' 28 U.S.C. § 2254(b)(1)(B)(I) and (ii)."

### I.   FACTS

The *pro se* petition in this federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 challenges the petitioner's January 4, 2001 conviction in the Connecticut superior court for assault on a public safety officer. This conviction resulted from a guilty plea. The state trial court imposed a sentence of three years imprisonment, to be served consecutive to a sentence previously imposed. The petitioner currently is scheduled to be released in February 2004.

On January 23, 2002, the petitioner filed a state petition for a writ of habeas corpus (hereinafter, "state habeas petition") in the Connecticut superior court for the judicial district of Hartford. In his *pro se* state habeas petition, the petitioner claims that his guilty plea was invalid because his attorneys were ineffective in that they failed to do a proper investigation

prior to advising him on the plea. The state habeas petition was referred to the habeas unit of the office of the chief public defender for investigation and determination as to whether the appointment of a special public defender would be required. On July 15, 2002, Attorney Walter C. Bansley was appointed as to represent the petitioner further in his state habeas action. In a letter subsequently prepared by Attorney Bansley in response to an inquiry by the state habeas judge, Bansley explained that he had written to the petitioner on July 13, 2002 anticipating his appointment and requesting that the petitioner provide to him, in writing, "a summary of the bases upon which he filed the Habeas action and the facts upon which he was relying." Exhibit A. [1] Attorney Bansley also attempted to visit the petitioner at the correctional facility in July 2002, but was not allowed to do so. Id. The warden of the correctional facility subsequently admitted error in refusing Attorney Bansley's visit and indicated that it would not recur. Exhibit B.

On September 4, 2002, Attorney Bansley forwarded another letter to the petitioner "again asking that he forward all the information [Bansley] requested," emphasizing that it would be far more helpful to have the petitioner's summary before a meeting so that the meeting would be more productive. Exhibit A. According to Attorney Bansley's letter, he, yet again, attempted to get the petitioner to comply by letter dated October 8, 2002, emphasizing the importance of the information and also pointing out that the petitioner had not returned the authorization form necessary to provide Attorney Bansley access to prior counsel's file for purposes of his investigation. Id. The October 28, 2002 letter to the state

---

[1] The correspondences upon which the respondent relies as exhibits were attached as exhibits by the petitioner himself to his pro se federal habeas corpus petition. Nevertheless, the respondent has reproduced these letters as attached exhibits to this memorandum as well.

2

habeas judge concludes that, "[t]o date, I have received **no** communication **at all** from [the petitioner] with the exception of his express complaint through your honor. . . ." Id. (emphasis in original)

In response to the apparent breakdown in this attorney-client relationship, new counsel, Attorney Howard Haims, was appointed for the petitioner by the state habeas court. Correspondence from Attorney Haims indicates that in December 2002, shortly after his appointment, Attorney Haims also tried to secure the necessary releases from the petitioner, but the petitioner did not complete and return all of them until April 2003, four months later, despite two reminder letters by Attorney Haims in the interim. Exhibits C, D, and G.

On March 12, 2003, Attorney Haims sent a letter to the petitioner indicating that the Hartford superior court had "suspended" all habeas hearings, purportedly due to staff and budgetary problems. Exhibit   However, one month later, on April 14, 2003, Attorney Haims sent another letter indicating that the Hartford court had resumed habeas hearings. Exhibit F. In a separate letter of that same date, Attorney Haims, apparently responding to something the petitioner had stated in an April 8th letter to him, informed the petitioner that he "could not in good faith represent to the federal court that the suspension of hearings in Hartford had, in any way, affected the prosecution of the above referenced matter." Exhibit G.

On April 16, 2003, the petitioner filed the instant federal habeas action in which he claims that the suspension of the habeas hearings in Hartford has resulted in a denial of access to the state courts in violation of his due process rights.

At a status conference before the state habeas court on November 12, 2003,

Attorney Haims expressed doubts about whether he will be able to raise any factually and/or legally supportable basis for challenging the petitioner's guilty plea and has suggested that he may need to file an <u>Anders</u> brief. Nevertheless, the habeas court has set a hearing date of December 4, 2003 in this case. The state habeas court also indicated that, if an <u>Anders</u> brief were going to be filed, notice should be given by November 19th and the <u>Anders</u> brief filed by November 26th. Exhibit H.

Meanwhile, on October 27, 2003, this court issued the show cause order to the respondent relating to whether the petitioner should be excused from exhausting his state court remedies in light of the allegations of his April 2003 federal petition, amended in July 2003.

## II.    ARGUMENT

"[H]abeas corpus petitioners bear the burden of demonstrating that they have exhausted state remedies." <u>Allen v. County Court, Ulster County</u>, 568 F.2d 998, 1012 n.9 (2d Cir. 1977); <u>United States ex rel. Cuomo v. Fay</u>, 257 F.2d 438, 442 (2d Cir. 1958), <u>cert. denied</u>, 358 U.S. 935 (1959); <u>Colon v. Johnson</u>, 19 F.Supp. 112, 119-20 (S.D.N.Y. 1998) and cases cited therein; <u>accord</u> <u>Darr v. Burford</u>, 339 U.S. 200, 218-19, 70 S.Ct. 587 (1950); <u>Carmichael v. White</u>, 163 F.3d 1044, 1045 (8th Cir. 1998); <u>Strickler v. Pruett</u>, 149 F.3d 1170 (4th Cir. 1998); <u>Burnett v. Hargett</u>, 139 F.3d 911 (10th Cir. 1998); <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997); <u>Adelson v. DiPaola</u>, 131 F.3d 259, 261 (1st Cir. 1997)("a habeas petitioner bears a *heavy* burden to show" he has exhausted)(emphasis added); <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994); <u>Cartwright v. Cupp</u>, 650 F.2d 1103, 1104 (9th Cir. 1981)(per curiam), <u>cert. denied</u>, 455 U.S. 1023 (1982). In the present case, this court has reframed the petitioner's due process claim as

4

one involving exhaustion, questioning whether there is an absence of available State corrective process, or that circumstances exist that render such process ineffective to protect his rights, because his state habeas petition has not been ruled upon in the twenty-two months it has been pending. 28 U.S.C. § 2254(b)(1)(B)(I) and (ii). The respondent submits that the exceptions provided for in § 2254(b)(1)(B)(I) and (ii) have not been met here for a number of reasons.

First, there is nothing in this case which demonstrates that either the state court itself or the prosecutor (i.e., the respondent's counsel in both the state and federal habeas actions) has been dilatory with respect to this petitioner's state habeas action. The one month moratorium on habeas hearings in Hartford back in March is insignificant in itself and, more importantly, insignificant in relation to the twenty-two month period about which this petitioner appears to be complaining. In fact, had the petitioner or his counsel filed an amended state petition and represented that this case was trial ready at any other point during these twenty-two months, there is no indication that either the respondent's counsel or the state habeas court would have been unwilling or unable to have proceeded to a hearing in this case immediately. Indeed, the petitioner's state habeas counsel candidly admits in his letter (attached as Exhibit G) that he "could not in good faith represent to the federal court that the suspension of hearings in Hartford had, in any way, affected the prosecution of the above referenced matter." Rather, it is apparent that the overwhelming majority of this time is attributable both to the petitioner himself and his attorney, who was hampered in large part by the petitioner's own failure for over nine months to provide the necessary information and releases either to Attorney Bansley or Attorney Haims. See also Davis v. Kelly, 316 F.3d 125, 127 (2d Cir.), cert. denied, 2003 U.S. LEXIS 7608

5

(2003)(no constitutional violation in delay which was attributable to petitioner's own actions)[2]; Coleman v. Watkins, 2002 U.S. App. LEXIS 24510, *6 (10th Cir. 2002), cert. denied, 2003 U.S. LEXIS 2792 (2003)(noting that "a majority of the delay [in the postconviction proceeding] was caused by either [the petitioner] or his counsel.").

Second, even assuming this court overlooks the petitioner's own responsibility, due to his complete lack of cooperation, for his attorneys' inability to prepare his case more quickly, the petitioner cannot rely upon his dissatisfaction with his appointed state habeas counsel as a basis for claiming that the state process itself is "absen[t]" or "ineffective" within the meaning of 28 U.S.C. § 2254(b)(1)(B)(I) and (ii). The petitioner has no federal constitutional right to counsel in a state collateral proceeding; Coleman v. Thompson, 501 U.S. 722, 752, 111 S. Ct. 2546 (1991).; and, thus, the state cannot be held responsible for the action or inaction of that attorney in a federal habeas proceeding. Raby v. Dretke, 2003 U.S. App. LEXIS 20943, *10-11 (5th Cir. 2003)(cannot rely upon claim of alleged ineffective assistance of state habeas counsel to circumvent the state exhaustion requirement); Body v. Watkins, 2002 U.S. App. LEXIS 21628, *10-12 (10th Cir. 2002), cert. denied, 2003 U.S. LEXIS 2284 (2003); Sceifers v. Trigg, 46 F.3d 701, 703-04 (7th Cir. 1995). If the petitioner believes that his attorney is to blame for the delay, he always retains the option to waive the assistance of counsel in his state habeas action and

---

[2] It should be noted that, in Davis, the Second Circuit was addressing the state court's resolution of the factors set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182 (1972) regarding the pretrial delay prior to the original criminal trial. However, that case does not stand for the proposition that the Barker test applies to any delay in a *postconviction* state proceeding. Moreover, in light of the fact that a petitioner has no right whatsoever to a state collateral proceeding; Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S.Ct. 1990 (1987); the respondent submits that the Barker test is not controlling.

proceed himself, without undue delay, with any meritorious claims he believes he may have. But it would be ironic, to say the least, if the fact that state law entitles the petitioner to an evidentiary hearing and to state-appointed counsel as a matter of right (neither of which is afforded as a matter of right in the federal habeas process), coupled with the fact that the state habeas court has been generous in affording petitioner's counsel the latitude he needed to investigate and prepare the petitioner's state habeas case, should now be used *against* the state as a basis for a federal court finding that the state is not doing enough to "protect the rights" of the petitioner.[3]  28 U.S.C. § 2254(b)(1)(B).

Third, even assuming that the state itself can be held responsible for the actions of the petitioner and his own attorney which have resulted in the delay, the period of time during which this matter has been pending is not unusually long in relation to postconviction cases in general, state or federal. It has been less than two years since the petitioner initially filed his petition and, barring yet further requests from the petitioner's side, the state habeas trial is scheduled for December 4th, still less than two years from the initiation of the action. By point of comparison, it has been observed that it is not uncommon for a *federal* habeas petition to take over two years to resolve. Rodriguez v. Bennett, 303 F.3d 435, 438 n.1 (2d Cir. 2002) citing Duncan v. Walker, 533 U.S. 167, 121 S.Ct. 2120 (2001)(Breyer, J., dissenting). This is true even though the issues raised in a federal petition almost never require an evidentiary hearing and, if addressed on the merits,

---

[3] It should be noted that this case exemplifies the "Catch-22" in which the state habeas courts find themselves: deny the petitioner's counsel the time he feels he needs to prepare the petitioner's case and risk the charge that the state court is denying the petitioner a fair opportunity to prepare and present his claims; conversely, permit counsel the time he thinks necessary and risk the charge that the state court process is "ineffective" because it is taking too long.

7

already have been substantially briefed in the state appellate process before the federal petition was even filed. It should not be considered surprising then for both the state habeas parties and the state habeas court to take at least a similar period of time to investigate, plead, litigate, brief and decide both the factual and legal issues in the state habeas corpus petition. See Tinsley v. O'Dea, 1998 U.S. App. LEXIS 5335 (6th Cir.), cert. denied, 1998 U.S. LEXIS 15823 (1998)(noting that, although a "six year delay in processing [petitioner's] direct apeal would clearly have been inordinate. . . such a delay in a post-conviction relief proceeding poses a closer question. . . ."); see also Harris v. Champion, 15 F.3d 1538 (10th Cir. 1994)(establishing two years as demarcation between presumptively reasonable and unreasonable delays in processing direct appeals in state court).

The respondent also would point out that the fact that the petitioner may soon be discharged from his state sentence should not affect this analysis. See Order to Show Cause at 1. As an initial matter, it should be noted that the petitioner himself waited *over a year* before filing any postconviction challenge to his guilty plea and his three-year sentence. It is therefore somewhat disingenuous of him to complain now about the delay in the state habeas process he waited so long to initiate, a delay which at least has more justification than any he has offered to explain his own in filing the state petition in the first place.

Furthermore, the proximity of the petitioner's release date simply cannot be a factor in determining the reasonableness of dispatch with which his habeas matter is being litigated. If so, both the parties and the state habeas court would be encouraged, if not required, to reassess the priority of cases on the assumption that the most serious

convictions, involving life sentences or the like, should be given *low* priority so that the habeas petitions involving minimal sentences can be addressed before the prisoner is discharged. Apart from the inherent unfairness of such a system, it is difficult to rationalize exalting the importance of "short sentence" cases over "long sentence" cases on the grounds that the most significant relief the prisoner is seeking from the courts, i.e., his release, he is so close to getting anyway due to the expiration of his sentence. Thus, while the absolute length of the delay in state court is certainly a factor to be considered, the mere fact that one prisoner does not face the burden of a lengthy sentence imposed on another should not provide him the added benefit of suggesting that the delay is somehow more prejudicial to him because he is "closer to going home." In any event, whether in state or federal court, it is not unusual for a prisoner to complete his sentence before the process of postconviction review (appeal and/or collateral review) has been completed, particularly where, as with the petitioner, his sentence was one of only a few years.

Under the circumstances here, including the fact that the overwhelming majority of delay in resolving the petitioner's state habeas petition has been the result of the inaction of either the petitioner himself or his counsel, it cannot be said that the state process for addressing his claims is either "absen[t]" or "ineffective" within the meaning of 28 U.S.C. § 2254(b)(1)(B)(I) and (ii). Accordingly, the exhaustion requirement of 28 U.S.C. § 2254(b) should not be excused.

Respectfully submitted,

RESPONDENT

By: _____
JAMES A. KILLEN
Senior Assistant State's Attorney
Appellate Bureau
Office of the Chief State's Attorney
Federal Bar No. ct 02058

## CERTIFICATION

I hereby certify that a copy of this document was mailed to Mark Alan Mason, (inmate #188879), pro se, Osborn Correctional Institution, P.O. Box 100 Somers, CT 06071 on November 19, 2003.

_____
JAMES A. KILLEN
Assistant State's Attorney