# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

MARK ALAN MASON
    PETITIONER

V.

WARDEN STRANGE, ET. AL.,
    RESPONDENTS

CIVIL NO: 3:03CV 692 (PCD)

2003 DEC 11  P 2: 36

DATE: December 1 , 2003

## PETITIONER'S RESPONSE TO RESPONDENT'S ORDER TO SHOW CAUSE DATED

The Pro-Se Petitioner, Mark Alan Mason files his response to the Respondent's Response to Court's Show Cause Order Dated October 27, 2003. The Petitioner states the following;

## JURISDICTION

THIS Honorable Court has and can take jurisdiction over the Petitioner's state Habeas Corpus Petition and decide the Federal Petition pending before this Court in accordance with U.S.C.A. Const. Art. 1 §9, CL 2; 28 U.S.C.A. § 2254. The Court in ANDREWS V. JOHNSON, 976 F.SUPP. 527 STATED;

    "A WRIT OF HABEAS CORPUS IS a right

    grounded in the common law, and is

PAGE 1.

MARK ALAN MASON

V.

WARDEN                                   DATE: December 1, 2003


protected and preserved by the
constitution."


The Petitioner also states that this Court has jurisdiction
to decide the pending matter in accordance with 28 U.S.C.A.
§ 2254 (b). The Court in GENTRY V. LANSDOWN 175. 3 F.d
1082 ruled as follows;

> "To satisfy the exhaustion requirement,
> habeas petitioner must show that he either
> made a fair presentation of his claims to
> the state courts or that he has no other
> presently available state remedies to
> pursue. 28 U.S.C.A. § 2254 (b) (1) (C)"


The Petitioner has already established that at the time
that Habeas Corpus Hearings was suspended by the Hartford
Superior Court, because of budgetary cuts and staff shortages
that the Petitioner had no state remedies available. The Pet-
itioner could not challenge Governor John Rowlands Budget that
was passed by the Connecticut Legislation. This left the Pet-
itioner no choice but to seek relief from the federal courts.
In GENTRY V. LANSDOWN 175 3 F.d. 1082 the Court ruled;

> "A federal habeas Petitioner meets the
> fair presentation requirement for exhaus-

PAGE 2.

Marc Alan Mason

v.

Warden                                    Date: December 1, 2003

tion If the STATE COURT Rules on the meerts of his claims, or If he presents his claims in a manner that entitles him to a ruling on the merits." 28 U.S.C.A §2254 (b)(1), (c).

The Petitioner has presented his STATE Habeas Claims to the STATE Habeas COURT in a fair, clear, and established claims, has given the STATE Habeas COURT time to rule on his merits of the STATE Petition, and has been not only denied this most protected right, but has been denied effective counsel's assistance.

The Petitioner will in the following facts and arguments demonstrate to this Honorable COURT that not only should this COURT decide the facts of the Petitioner's Claims, but that the Petitioner could not and would not be given a fair and just hearing at the STATE Level because of the conflicts between the Petitioner and his Counsel Attorney Howard Haims, and that the COURT proceedings at the STATE Level would be prejudicial to the Petitioner's CONSTITUTIONAL RIGHTS, because the STATE COURT is now only proceeding with the STATE Habeas Petition because of this pending matter before this COURT, and feels forced to do so.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003


FACTS 1.

The PRO-SE PETITIONER MARK ALAN MASON is in this Federal Habeas Corpus PETITION filed pursuant to 28 U.S.C. § 2254 is Challenging his January 4th, 2001 conviction in the Danbury Superior Court for violating Conn. Gen. Stat. 53a-167c assault on a police or fire offical. This conviction was the result of a guilty plea by the Petitioner based upon Counsel's advice. The State Court Judge Patrick Carroll imposed a sentence of three years imprisonment, to be served consecutive to a sentence previously imposed. The Petitioner currently is scheduled to be released in February 2004.

In the Respondent's response at page 2, pargh. 1, Lines 6, 7, 8, & 9 the State quotes remarks from a letter from Attorney Bansely to Judge Rittenband concerning corresp-ondence that Attorney Bansely states he sent the Petitioner on July 13, 2002;

"--- Bansely explained that he had written to the Petitioner, on July 13, 2002 anticipating his appointment and requesting that the Pet-itioner provide to, him in writing," "A summ-ary of the bases upon which he filed the

PAGE 4.

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003


Habeas action and the, facts upon which

he was relying." (Exhibit A. Respondents)

The Petitioner in his AMENDED Petition DATED July 16, 2003 AT

Pages 4 & 5   STATES in his EXAMPLES AT 1);

                " WHILE THE PETITIONER WAS housed AT

                OSBORN CORR. INST. FROM July 3, 2002

                to December 6, 2002, the DEPARTMENT OF

                CORRECTIONS AND IT'S STAFF INTERFERED

                WITH the PETITIONER RECEIVING HIS LEGAL

                MAIL and legal VISITS, FROM ATTORNEY

                WALTER C. BANSLEY who at that time

                represented the Petitioner in the STATE

                HABEAS CORPUS Petition Pending in the

                HARTFORD Superior COURT, which this in-

                terference caused A CONFLICT BETWEEN

                the PETITIONER AND ATTORNEY BANSLEY,

                because the PETITIONER believed ATTOR-

                NEY Bansley WAS NOT properly represent-

                ing the PETITIONER. IT THEN CAME TO

                LIGHT THAT THE DEPARTMENT OF CORR-

                ECTIONS AND ITS STAFF AT OSBORN

                        PAGE 5

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003

CORR. INST. had NOT been Forwarding the PETITIONER'S LEGAL MAIL TO HIM, NOR did they allow ATTORNEY Bansley TO VISIT the PETITIONER. THIS ULTIMATELY caused ATTORNEY Bansley to withdraw From the PETITIONERS case and the HABEAS Corpus Unit, which DELAYED the PETITIONER'S HABEAS Corpus PETITION From being heard. (Exhibits A, B, B1).

The Petitioner also in his Letter to Judge Richard M. Rittenband DATED November 13, 2002 the Petitioner at pages 1, & 2 STATES that he had NOT received a Letter dated July 13, 2002 From ATTORNEY Bansley, IN Fact the Petitioner posed a question concerning this Letter from ATTORNEY Bansley to the Petitioner stating to Judge Rittenband the Following:

"--- Attorney Bansley claims that on July 13, 2002 he forward a lengthy letter to me detailing his understanding of the Law regarding Habeas matters and outlining several matters that he thought specific to my

PAGE 6.

Mark Alan Mason

v.

Warden

Date: December 1, 2003

because attorney Bansley did not send said letter to the Petitioner (which after several letters from attorney Bansley after the Petitioner's complaint to Judge Rittenband, the Petitioner is led to believe that the Department of Corrections and it's staff is at fault), or that the Department of Correction's staff at Osborn Corr. Inst. did not forward said letter to the Petitioner. Because of this conflict that was created between the Petitioner and attorney Bansley, it caused a significant delay in the Petitioner's State Habeas Corpus from being heard.

Attorney Bansley goes on to state that he sent the Petitioner letters on September 4, 2002 and October 8, 2002 "again asking that he (Petitioner) forward all the information [Bansley] requested," and pointing out that the Petitioner had not returned the authorization form necessary to provide Attorney Bansley access to prior counsel's file for purpose of his investigation. _Id._ Attorney Bansley concluded to the State Habeas Judge Rittenband that "he had received NO COMMUNICATION AT ALL from [the Petitioner] with the exception of his express complaint through your Honor --- " _Id._ (emphasis in original.)

The Petitioner in his letter to Honorable Judge Richard M. Rittenband at page 5, paragh. 1 states;

Maric Alan Mason

V.

Warden

Date: December 1, 2003

"Your Honor, Attorney Bansleys' claims that to this date has received no communications at all from me with the exception of my express complaint through your Honor----, Sir enclosed you will find copies of inmate requests forms from myself to three (3) different correctional counselor requesting legal telephone calls to Attorneys Bansleys' office on three (3) different occasions. You will also notice the remarks made by the Correctional Counselors concerning these telephone calls. Attorney Bansley's claims that he did not receive communications from me, is False, I did try on several occasions to call Attorney Bansley and wrote Attorney Bansley on several occasions (I did not keep copies of these letters) without Attorney Bansley responding to my telephone calls or letters". (Please see Exhibits: D, E, F, G, and H).

The Petitioner again states that the actions by Attorney Bansley was questionable, and because the Petitioner was

Mark Alan Mason

V.

Warden                                          Date: December 1, 2003


making every effort through telephone calls and written letters to Attorney Bansley to move his STATE HABEAS PETITION through the STATE HABEAS Corpus Court in HARTFORD, but because of the conflict that was created either by Attorney Bansley (?) or The Department of Corrections and it's STAFF AT Osborn Corr. Inst. the Petitioner's STATE HABEAS Petition was significantly delayed, thus creating a very serious Liberty Interest.

      The Respondent's in their Response STATE AT page 3, pargh 2 the following;

> "Correspondence from Attorney Harms indicates that in December 2002, shortly after his Appointment, Attorney Harms also tried to secure the Necessary releases from the Petitioner, but the Petitioner did not complete and return all of them until April 2003, four months later, despite two reminder letters by Attorney Harms in the Interim. Exhibits C, D and G."

The Petitioner did receive five (5) release forms from Attorney Harms in a November 13, 2002. The Petitioner had all five (5)

PAGE 10.

MARK ALAN MASON

V.

WARDEN                                        DATE: December 1, 2003


of these releases notarized by Notary Public Mr. Harrison at the Library in Osborn Corr. Inst. The Petitioner filled out all five (5) releases to the Attorney(s)/Agencies, but Attorney Hains in a letter dated December 23, 2002 sent the Petitioner five (5) other release forms explaining that I should have them notarized and "Please do not address the releases." ~~(PLEASE SEE ATTACHED EXHIBIT I.)~~

The Petitioner in his amended Petition dated July 16, 2003 at page 5, Example Two(2) states;

> "While the Petitioner was incarcer-
> ated at Carl Robinson Corr. Inst.,
> From December 6, 2002 until June 4, 2003,
> the Petitioner was denied legal mat-
> erials, copies, Law Library Access, and
> Notary Services by the Correctional Staff
> at Carl Robinson C.I. which has delayed
> the Petitioner's Habeas Corpus Petition from
> being heard. ~~JTK~~ "

The Petitioner on or about February 3, 2003 forward a letter to Attorney Hains with two(2) releases. The Petitioner ex-plained to Attorney Hains that the Notary Public Mr. Gray

PAGE 11.

MARK ALAN MASON

V.

WARDEN                                                    DATE: December 1, 2003

would only Notarize two (2) Releases a week. Attorney Haims responded to the Petitioner's Letter on February 11, 2003 stating;

> "As you are only able to have two releases Notarized at any given time, please have the medical authorizations Notarized before the releases for legal records, (ATTACHED PETITIONER'S EXHIBIT ~~I In Respondent's Exhibit~~ C.)

The Petitioner also states the reasons why it took the Petitioner four (4) months to return all releases to attorney Haims, is because the Petitioner was being denied both Notary services and envelopes by the Department of Corrections and it's staff at Carl Robinson Corr. Inst. Attorney Haims was aware of the Petitioner's problems occurring at Carl Robinson Corr. Inst. and attorney Haims could had either contacted the Court of these problems or contacted administrators within the Department of Corrections to have these problems corrected. The Petitioner was only able to mail said releases to attorney Haims after "Hustling" a envelope to mail the releases to attorney Haims. As Notary Public Mr. Gray at Carl Robinson Corr. Inst. told the Petit-

PAGE 12

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003

when the Petitioner complained about the Notary services;

"I work for Governor, not you, so if I want I do not even have to notarize shit for you." (Mr. Gray at Carl Robinson C.I. 2002)

The Respondent's state at page 3, pargh 3, the following;

"---, Attorney Haims, apparently responding to something the Petitioner had stated in an April 8th letter to him, informed the petitioner that he "could not in good faith represent to the federal Court that the suspension of hearings in Hartford had, in anyway, affected the prosecution of the above referenced matter." ~~(Exhibit - G, Respondent's)~~

The Petitioner states that when Attorney Haims made this statement, Attorney Haims had not even read the Petitioner's Petition pending before the federal Court, and the Petitioner believes that to this day Attorney Haims has never read the Petitioner's federal Complaint, which makes it very

PAGE 13.

Mark Alan Mason

V.

Warden                                              Date: December 1, 2003


hard for the Petitioner to believe that Attorney Haims could make either a professional judgement or a sound judgement on if he could represent the Petitioner's Petition in federal court in good faith. This also brings into question if Attorney Haims is representing the Petitioner to the best of his abilities in the Petitioner's State Habeas Petition now pending and set for trial on December 4, 2003 in Rockville Superior Court.

The Petitioner brings to the Court's attention the following issues pertaining to Attorney Haims representation in State court,

[1] Attorney Haims was appointed to represent the Petitioner on November 6, 2002. Since this time Attorney Haims has continued to be non-productive in investigating or researching the Petitioner's Claims in his State Habeas, This is well established in the transcribes of the Status Conference before the State Habeas Court on November 12, 2003 in which the Honorable Judge Fuger, Jr. even questions Attorney Haims preparation of the Petitioner's Case. At page 3, Lines 11 thru 26 the following is stated;

11  " Mr. Haims: Could I have one more week, please,
12  on that your Honor ? "

PAGE 14.

MACK ALAN MASON

V.

WARDEN                                              Date: December 1, 2003

13 "THE COURT: You've had a year, and my understanding
14 is you're telling me you're going to file an Anders
15 brief."
16 " MR. HAIMS: Yes, Your Honor, I've got other matters
17 pending in this Court, as well other Courts, Your
18 Honor. I would request.--"
19 "The Court: You've had this case for over a year.
20 1/26 for the return; reply, 12/01; certificate of closed
21 pleadings, 12/02; briefs, if you wish any, 12/04;
22 exchange any witness lists on 12/02."
23 "To the extent that you wish to file an Anders
24 brief, Mr. Haims, that brief will be due not later
25 than 12/26. Notice of intent to file Anders brief
26 will be due NO / Later than 11/19."

                    EXHIBIT: / RESPONDENTS EXHIBIT: H

The brings into question many issues related to the Petit-
ioner's state Habeas Petition and attorney Haims representa-
tion. First, attorney Haims meet with the Petitioner on Oct-
ober 29, 2003 at Osborn Corr. Inst. at this meeting attorney
Haims had not even looked over the documents that the
Petitioner's sister (Sherry Mason 18 Pautipaug Hill Road, Baltic
C.T. 06330) sent to attorney Haims, which within these doc-
uments was the newly discoveried evidence that the Petit-

                         PAGE 15.

Mark Alan Mason

V.

Warden                                    Date: December 1, 2003


does plan to present before the court to determine if these newly discovered documents could or would put doubt in a jurys mind on if the Petitioner committed or had the state of mind to committ the crime the Petitioner was accussed of committing. The Petitioner also has in his files copies of all the letters that the Petitioner wrote counsel during his criminal proceedings, which the Petitioner told attorney Hains during the meeting he had, which would establish that the Petitioner had on several occasions requested counsel to attain and investigate these newly discovered documents during the Petitioner's criminal proceedings, which could and would allow the court to consider that if these newly discovered documents would had been attained by counsel during the criminal proceedings, there would had a could had been a different outcome. attorney Hains told the Petitioner he did not need these copies. Last The Petitioner puts forth to this court that the Petitioner was not present at the November 12, 2003 status conference and only learned of attorney Hains doubts about the Petitioner claims through the Respondant's response to this court which the Petitioner received on November 20, 2003 at approximately 7:48 p.m. Its "very" surprising to the Petitioner that attorney Hains would not had immediately contacted the Petitioner after the November 12, 2003

PAGE 16.

MARK ALAN MASON

V.

WARDEN                                              DATE: December 1, 2003


STATUS COFEENCE to NOT only discuss his cocens of the Petitioner's claims, but also his wanting to file a Anders brief. Most importantly is the trial date set for December 4, 2003 and calling of witnesses. Considering the fact that November 19, 2003 the STATE COURTS dead line for ATTORNEY Harns to give NOTICE of Filing a Anders brief is come and went without ATTORNEY Harns contacting the Petitioner concerning any of these matters, the Petitioner at this point can only wait upon another motion from a different ATTORNEY in another Court to find out what ATTORNEY Harns has decided to do.


   [2]. The Petitioner on a about December 2002 Forwed a letter to ATTORNEY Harns explaining the subject matter of my STATE Habeas Petition and asking that different aspects of my claims be looked into. I also asked ATTORNEY Harns to get my sentencing transcript. ATTORNEY Harns responded on or about December 23, 2002 stating in pargh 2, the following;

        "As to your letter and the releases, please be advised as follows. While I appreciate you willingness to pro-


PAGE 17.

MARK ALAN MASON

V.

WARDEN                                         DATE: December 1, 2003

vide information please refrain from stating
what I do or what is relevant as regards
your matter. Moreover, your efforts may be
counterproductive. Please note that attorney
Barlow had nothing to do with the matter
for which the present habeas relief is sought
and what information she may have is not cover-
ed by the authorization forwarded. Your
efforts would have been better directed to
appraising me as to why you thought I should
discuss your matter with attorney Barlow.
As to your admonishment 'we' need the
sentencing transcript, be advised that in
plea cases these are ordered pro forma."

**EXHIBIT: I**

The Petitioner finds this letter by attorney Hains very dis-
respectful, considering the fact that attorney Hains at that
point had done or had given no effort in helping the Petition-
er "flesh out your allegations in order to perform a complete
investigation." (Please see Exhibit: M ) Attorney Hains could
not possible believed that he could professionally repre-
sent the Petitioner's claims in the Habeas Corpus court
by telling the Petitioner more or less to shut up and let

PAGE 18.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003


him (ATTORNEY HAINS) handle my case. Considering the fact that both at the OCTOBER 25, 2003 VISIT with the Petitioner ATTORNEY HAINS had NOT even looked at the documents that the Petitioner's sister sent ATTORNEY HAINS IN FEBRUARY of 2003. that attained all the newly discovered materials, but also at the NOVEMBER 12, 2003 STATUS CONFERENCE Judge Fuger. Jr. found that AFTER a year of having the Petitioner's CASE ATTORNEY HAINS seemed very unprepared to represent the <u>PETITIONER'S CLAIMS</u>! ATTORNEY HAINS DOUBTS about the Petitioner's claims IN STATE COURT is NOT from a lack of evidence presented to ATTORNEY HAINS by the Petitioner and his SISTER, but due to ATTORNEY HAINS NOT properly communicating or investigating the Petitioner's CLAIMS. The Petitioner has presented ATTORNEY HAINS with enough evidence to present to any COURT for consideration of if the Petitioner's COUNSEL(S) during his criminal proceedings was ineffective, and if the newly discovered documents was enough to throw out the Petitioner's plea and order a new /or a trial.

[3]. The Petitioner's sister (shelly mason, 18 Prautipaug Hill Rd., Baltic, C.T. 06330) IN FEBRUARY of 2003 sent ATTORNEY HAINS a file of documents attaining the newly dis-

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003


covered documents that the Petitioner was/is going to pre-
sent to the STATE Habeas Court to not only support his
claim of ineffective assistance of counsel(s), but also his
claim of newly discovered evidence. Attorney Harms responded
to a letter that I wrote Attorney Harms on a about April
8, 2003 requesting Attorney Harms to forward a copy of these
documents to myself at Carl Robinson Corr. Inst., explaining that
my sister (Sherry Mason) had mailed a copy of these documents
to me, but that I never received them, (for unknown reas-
ons, but most likely due to a Department of Corrections employee
due to the fact that these documents had copies of pictures
of Correctional Officer(s), and Institutional records), Attorney
Harms responded on April 14, 2003; at paragh. 3   stating;

        "....Nor is this office a secretarial service.
        Quite frankly I resent being sent three
        hundred pages with instructions to forward
        the same to you because your sister could
        not. Moreover the forgoing raises ethical
        issues with me. I should not use my position
        to circumvent Department of Corrections rules.
        I will review the material forwarded by
        your sister. However if you desire a con-


PAGE 20.

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003

plete copy of the materials, and I will do this only once, have your sister forward a complete copy of the materials forwarded to this office on MARCH 20, 2003." Please ~~(see attached exhibit N)~~

The Petitioner was NOT asking ATTORNEY Hairns to forward the Petitioner any personal documents, (i.e. letters between family, friend, other inmates, ect, ect. ect.) but only documents pretaining to the Petitioner's state habeas Petition that would help the Petitioner establish his claims. In the Connecticut Rules of Professional Conduct at Rule 1.4 Communication (A) (B) It reads as follows;

[A]. A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information

[B]. A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

~~(Please see attached exhibit O)~~

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003

ATTORNEY HAINS HAS NOT EVEN MEET THIS MOST FUNDAMENTAL RULE, NIETHER HAS ATTORNEY HAINS forward a copy of these documents to the Petitioner so the Petitioner could help establish and show his claims have merits, but has not even contacted the Petitioner concerning the outcome of the STATUS CON-FRENCE that took place on NOVEMBER 12, 2003, where NOT only was there discussions of filing a Anders beref over a amended petition with deadlines looming to do so, but also a trial date of December 4, 2003 established where the Petit-ioner would be calling witnesses to establish his claims of ineffective assistance of counsel and newly discovered evidence. This disturbs the Petitioner very much, because the Petitioner feels that any decisions made by ATTORNEY HAINS concerning the Petitioner's STATE HABEAS Petition should be dis-cussed between ATTORNEY HAINS and the Petitioner before a decision and actions are taking by ATTORNEY HAINS. ATT-ORNEY HAINS HAS NOT REPRESENTED the Petitioner's CLAIMS or interests in the STATE HABEAS Petition, but his own.

Respectfully

MARK ALAN MASON
# 188879
OSBURN COR. INST.
335 BILTON ROAD
P.O. BOX 100
SOMERS, C.T. 06071

PAGE 22

Mark Alad Mason

V.

Warden
Date: December 1, 2003

# ARGUMENT

The Respondent's in their first argument state that there is nothing in this case which demonstrates that either the state court itself or the prosecutor (i.e., the respondent's counsel in both the state and federal habeas actions) has been dilatory with respect to this Petitioner's state habeas action. The Petitioner's state Habeas petition was suspended/delayed because the Hartford Superior Court suspended all Habeas Hearings for a month, because of budgetary cuts and staff shortages that was imposed by Governor John Rowland. If facts are established that the Petitioner's state Habeas court appointed attorney Howard Haims caused undue delays, then his representation must fall on the state Habeas Court and the State Habeas Public Defender's Services because the Petitioner was appointed this attorney, not by the Petitioner's judgement, but by the Court's judgement. The Court appointed state Habeas attorney Howard Haims was appointed to represent the Petitioner on November 6, 2002, did no investigation into the Petitioner's claims of ineffective assistance of counsel and newly discovered evidence until October 25, 2003 when the state Court

Page 1.
A

MARK ALAN MASON

V.

WARDEN                              DATE: December 1, 2003


Appointed Attorney Howard Haims came and saw the Petitioner at Osborn Corr. Inst., where the Petitioner had to go through the 300 pages of documents the Petitioner's sister had sent Attorney Haims back in February of 2003, and show Attorney Haims all the inconsistencies in the four (4) sets of statements that was submitted by the victim (Correctional Officer Marc Owens) and the only witness (Correctional Officer Edgar Morales), First, set of institutional documents submitted on March 13, 1999, State Police statement taken by State Police Officer Michael Dyki # 372 on March 13, 1999, a second set of institutional documents submitted after the first set of documents was losted by the Department of Corrections, and statements taken by Lieutenant Alberto Saavedra of the Department of Corrections Security Division, Edgar Morales's statement taken May 4, 1999, Marc Owens taken May 5, 1999. Attorney Haims asked the Petitioner why he wanted to continue on with the State Habeas matter if the Petitioner only had 90 days left to go home, and if the case was turned over the States Attorney had already told Attorney Haims that the state would seek the full 10 years. The Petitioner told Attorney Haims that it was principle that the

PAGE 2.                                                    A

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003


Petitioner believed in both his defenses at the time of his criminal proceedings, of one; the Correctional Officers involved had initiated the incident, and two; that the Petitioner was suffering from a acute mental health illness(es) at the time of the incident. Attorney Haims told the Petitioner that when he plead guilty on November 22, 2000 and tried to withdraw his plea of guilty during the sentencing on January 4, 2001, that the Judge Patrick Carrol found that there was no reason to allow the Petitioner to withdraw his guilty plea. The Petitioner then explained to Attorney Howard Haims that the Petitioner was at the time of his guilty and sentencing was taken (psych Antipsychotic) medications that not only made the Petitioner very prone to the suggestions and influences of my criminal attorney V. Hutchinsons, but also made the Petitioner's thinking slow and unclear. Attorney Howard Haims asked what medications the Petitioner was taken at the time. The Petitioner explained the medications. Attorney Howard Haims told the Petitioner he would look into the Petitioner's claims and get back to the Petitioner about how he (Attorney Haims) would proceed with the Petitioner's state habeas petition.

            The Petitioner now puts forth the follow-


                    Page 3.                                    A

MARK ALAN MASON

V.

WARDEN                                                DATE: December 1, 2003


ing arguments to establish his claims to the Court of why the Petitioner's claims are NOT FRIVOLOUS IN NATURE and without merit as ATTORNEY Howard Harris has tried to present to the STATE Habeas Court. The Petitioner will show the Court that because of the ineffectiveness of his Criminal Attorneys and the newly discovered evidence, the Petitioner should be allowed to withdraw his plea of guilty, and proceed to a trial by his peers/Jury.

                                              Respectfully

December 1, 2003
     DATE

                        MARK ALAN MASON
                        # 188879
                        OSBorn Corr. Inst.
                        335 Bolton Road
                        P.O. Box 100
                        Somers, C.T. 06071


PAGE 4.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003


## ARGUMENT FOR ALLOWING PLEA WITHDRAWAL.

ATTORNEY Howard Haims in his MEMORANDUM in support of Motion For Permission To withdraw as counsel at page 13 pargh. 2 quotes Pate V. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L. Ed. 2d 315 (1966);

> [ - - - imposes a constitutional obligation, under the due process clause, to undertake an independant judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial or to plea guilty. When a Pate inquiry is required, a court may not rely on the defendant's subjective appraisal of his own capacity or on the court's personal observations of the defendant's competence - - - - a defendant who challenges the validity of his guilty plea for lack of an evidentiary inquiry into his competence must make a showing that, at the time of his plea, the court had before it specific factual allegations that, if true, would constitute substantial evidence of

Mark Alan Mason

V.

Warden

Date: December 1, 2003

mental impairment."

The Petitioner put before the court on November 22, 2000 at the Petitioner's plea hearing his competency. At page 3, Lines 2-12, of the plea transcript reads as;

2: THE COURT: Okay. Now, as you stand here in court
3: today, are you under the influence of any alcohol,
4: drugs, or medication of any kind that would prevent you
5: from fully understanding what was happening in court
6: today?

7: Ms. HUTCHINSON: Your Honor, he does take
8: medication, but it helps him to think clearer.

9: THE COURT: Okay. So does that medication that
10: you're taking today, does that interfere with your
11: ability to understand me in any way?

12: MR. MASON: No.

The Petitioner points to the fact that when the court was canvassing the Petitioner about if the Petition-

PAGE 2.

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003


er was taking any medication that would interfere with his ability to understand him in any way. The Petitioner did not answer this question but the Petitioner's attorney Ms. Hutchinson, who stated that the Petitioner was taking medication but it help him to think clearer. The Petitioner did not make this statement. When the Court again asked the Petitioner if this medication would interfere with his ability to understand him in any way. The Petitioner only answered "No" after looking at his counsel who shook her head no. The Court had the information before it that the Petitioner was on some kind of medication(s) that altered the Petitioner's thinking. Attorney Ms. Hutchinson stated that it helped the Petitioner to think clearer, which the Petitioner would state the opposite, and say that the medications the Petitioner was taking on November 22, 2000 caused the Petitioner unable to make a sound judgment OR answer without the help and instructions of his counsel. The Petitioner puts forth the following as proof to the Petitioner's claim; out of the Nursing Handbook of medication.

[1]. Gabapentin / Neurontin.

   SIDE EFFECTS: CNS: MOST COMMONLY:

   "--- abnormal thinking --- abnormal coord-

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003

INATION, --- CONFUSION, --- emotional lability,
--- stupor, -- decreased position sense, ---
agitation depersonalization, --- "Doped-up"
sensation, ---" pages 662 & 663

CLIENT / FAMILY TEACHING

LINE 3. "---- DO NOT PERFORM ANY activities
that require mental alertness until full drug
effects are realized". page 664 ~~ATTACHED EXHIBIT~~: Q

[2] RISPERIDONE / RISPERDAL

SIDE EFFECTS:
"autonmic instability, --- NERVOUSNESS, ---
impaired concentration, --- CONFUSION ---"
PAGES: 1176 & 1177, ATTACHED EXHIBIT

CLIENT / FAMILY TEACHING

LINE 2. "Drug may impair judgment, motor
skills, and thinking and cause blurred vis-
ion; determine drug effects before engaging
in activities that require mental alertness."
Page: 1178, ~~ATTACHED EXHIBIT~~: R•

P.W.

MARK ALIAS MASON

v.

WARDEN                                         DATE: December 1, 2003


The Court, nor The Petitioner's Counsel Attorney Hutchinson inquired into what medications the Petitioner was taken the day of his plea, which IF the rule of _Pate_ was followed, then the Court should had done a Independant judicial inquiry into this matter and not depend on the Petitioner's subjective appraisal of his own ability to understand the proceedings taking place. If the Court would had done a proper inquiry into the medications the Petitioner was taking, it would had come to light at the time of the Plea that the Petitioner was not making sound judgments of his own, but was depending and was influenced by Counsel, case workers, Doctors, and family members. The Petitioner now will put forth the following to show the Court that the Petitioner was at the time of the Plea and leading up to the date of the Plea having serious mental health problems;

[1]. INMATE REQUEST FORM : DATED MAY 16, 2000, submitted: TO MENTAL HEALTH DEPARTMENT:

"I spoke with Doctor Heasley and Ms. Hughes, I told them that I was stressed

MARK ALAN MASON

V.

WARDEN

Date: December 1, 2003

out and needed more medications --- "
" --- I told them I wanted to be
transferred back to Garner C.I. becau-
se the Program here at Northern C.I was
creating alot of stress on me."

~~ATTACHED EXHIBIT 5~~

[2]. INMATE GRIEVANCE FORM A, LEVEL 1,
    DATED: JUNE 26, 2000
    SUBMITTED TO: HEALTH DEPT.

    ACTION REQUESTED:
    "I want to see the doctor, I want saline
    drops so I can take the medications I
    need for my mental illness(s), --- "
    ~~ATTACHED EXHIBIT: T~~

[3]. INMATE REQUEST FORM,
    DATED: JUNE 22, 2000,
    SUBMITTED TO: MS. HUGHES,
    " I would like to KNOW IF I could
    Please see you as soon as possible, at
    this time I am not taking any of my

PAGE 6.

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003

medications because of the problem I
am having breathing. Could I please see
you about this."

ACTION TAKEN and/or RESPONSE:

" I understand you have stopped your
medication. I told you I would have the
Thorozine D/c'd. I will request that medical
continue to bring the Vistrail (it too can be
drying) you can refuse it if you wish. Dr.
Hensaly will be here next week. 6/26
      S. Hughes "

ATTACHED  EXHIBIT:

[4]. INMATE GRIEVANCE FORM A, LEVEL 1.
      DATED: July 4, 2000
      SUBMITTED TO: HEALTH DEPT.

      ACTION REQUESTED:

      "I want my medication continued imm-
      ediately, I want to be put on Doctor Hen-
      sley's list to be seen as soon as possible,
      I want medications adjusted."

                    PAGE 7.

Mark Alan Mason

V.

Warden

Date: December 1, 2003

Grievance Issue:

" Medication and Psychiatric Evaluation"

Reasons: "Denied"

"Presently being treated appropriatly."

Attached Exhibit: V

[5]. Inmate Request Form

Dated: Oct. 15, 2000

Submitted To: Ms. Hughes "Emergency"

Request:

" PLEASE I AM BEGGING YOU TO HELP ME!!
Ms. Hughes, I have been having major Anxiety
attacks that has been leaving me very upset.
I am begging you to Please help me with
these attacks. I am barely making it thr-
ough a day without hurting myself becau-
se of these attacks. Please give me some-
thing to help me. Thank-you "

Action taken and/or response:

" It's hard to wait isn't it "

10-17-00 , S Hughes NC

MARK ALAN MASON

V.

WARDEN                                              DATE: December 1, 2003

~~ATTACHED EXHIBIT "W"~~

[6]. INMATE REQUEST FORM
      DATED: OCTOBER 23, 2000
      Submitted: Ms. Hughes


REQUEST:
" I write you asking that you please
see me out of my cell as soon as poss-
ible. Thank-you."


ACTION TAKEN and/or RESPONSE:
" I attempted to see you today 10/25
however I was told you were out
of the institution. I'll try to see you
Friday 10/27 per schedule."
S. Hughes  NC.
ATTACHED EXHIBIT: X#


[7]. INMATE GRIEVANCE FORM IS, LEVEL 1
      DATED: NOV. 2, 2000
      SUBMITTED: HEALTH DEPT.


PAGE 9.                                              P.W.

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

ACTION REQUESTED:

" I want to see the doctor concerning this problem"

~~ATTACHED EXHIBIT: Y~~

      The Petitioner would also like to state that between these dates, the Petitioner was placed in the infirmary because of the mental Health Crisises the Petitioner was having and on or about November 22, 2000 the Petitione was in the infirmary because of his mental Health problems the Petitioner was having.

      From these exhibits and the transcript it's self shows that the Court's Crossesse of the Petitioner must and does fall well below the due process Clause the Petitioner was and is entitled to. These exhibits also shows that if a independant judicial inquiry or evidentiary inquiry done when the Court learned that the Petitioner was on medications that altered the Petitioner's thinking, then the above facts would had come to light, and if the Petitioner's state Habeas attorney; Howard Harris would had done a proper investigation and interview of the Petitioner and his claims, then these facts would had come to light. Attorney Harris investigation only consisted of his opinions and not

PAGE 10.

P.W.

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

factual research or investigation. The Petitioner can and does prove this Fact by Attorney Hains statement at page 23, pargh. 1, lines 3 - 5;

"Moreover, counsel never requested a competency hearing, nor filed a notice of defense the Petitioner's mental state into issue."

The Petitioner puts before this Court the following motions filed by the Petitioner's Defense Counsel Attorney Dennis P. McDonough during the Petitioner's criminal proceedings;

[1] MOTION:

"NOTICE OF INTENTION TO RELY ON DEFENSE OF MENTAL DISEASE OR DEFECT."

FILED: May 3, 2000

SUBMITTED BY: THE DEFENDANT/
DENNIS P. MCDONOUGH
HIS SPECIAL PUBLIC DEFENDER.

PAGE 11.

R.W.

MARK ALAN MASON

v.

WARDEN

DATE: December 1, 2003

ATTACHED EXHIBIT: A1

[2]. MOTION:

"MOTION TO CONTINUE"

FILED: May 3, 2000

LINE 1. The defendant, through his counsel, has filed a Notice of Intention to rely on Defense of Mental Disease or Defect.

submitted by: The Defendant /

Dennis P. McDonough

His Special Public Defender.

[3] MOTION"

"MOTION FOR CONTINUANCE"

FILED: July 7, 2000

LINE 1. The defendant has previously filed a Notice of Intent to rely on Defense of Mental Disease or Defect dated May 3, 2000.

SUBMITTED BY: THE DEFENDANT /

DENNIS P. McDONOUGH

PAGE 12.

P.W.

MARK AIAD MASON

V.

WARDEN                                    DATE: December 1, 2003


HIS SPECIAL PUBLIC DEFENDER


[4] MOTION

" MOTION FOR CONTINUANCE "
FILED: August 7. 2000
Line 1. The defendant has previously filed
a notice of intent to rely on "Defense of
Mental Disease or Defect dated May 3. 2000."


Submitted By: The Defendant/
Dennis P. McDonough
His Special Public Defender.



The Petitioner would also like to draw
THE COURT'S ATTENTION to THE SENTENCING transcript DATED
January 4, 2001, and Honorable Judge PATRICK L. CARROLL III
REMARKS AT page 31 Lines 22 thru 27 and page 32, Lines 1
thru 11;

22: . I'm also

23: Recommending  that the mittimus reflect that Mr. MASON

24: receive the mental health treatment that has been


PAGE 13                                    R.W.

Mark Alan Mason

V.

Warden                                    Date: December 1, 2003

25: asked For here today. The mittimus should reflect
26: that he requires mental health treatment.
27:        With respect to the request that was made by his

   PAGE 32
1: sister Sherry, Ms. Hutchinson, I certainly would agree
2: that Whiting is better equipped to handle the types of
3: problems that Mr. Mason may be suffering from. But I
4: don't believe that I have the right to make a direct
5: sentence to Whiting. To the extent that my comments
6: here today may have some influence on corrections
7: officials, I will recommend that a sentence to Whiting
8: be considered by the Department of Corrections in the
9: hope that perhaps they will be able to address more
10: adequately the problems that Mr. Mason and his family
11: have put forth on the record today.


        The Petitioner finds It hard to believe that
Attorney Hains did a proper investigation and research into
the Petitioner's claim that he should be allowed to with-
draw his guilty plea based on the Petitioner's competency at
the plea hearing on November 22, 2000, that the Petitioner is
questioning now, and missed all the above metioned motions


                    PAGE 14.                         RW.

MARK ALAN MASON

V.

WARDEN                                    Date: December 1, 2003


which clearely states that the Petitioner was going to rely
on the Defense of Mental Disease or Defect, and missed Judge
Patrick L. Carroll's remarks that not only was "Whiting better
equipped to handle the types of problems that the Petitioner may
be suffering from, but will recommend that a sentence to Wh-
iting be considered." Judge Carroll's remarks shows that the
Court knew the Petitioner was suffering from a very serious
mental health Illness(es), and should had done a Independant
Judicial Inquiry and Evidentary hearing into the defendant's
Competence. If attorney Hanns would had and did do a
proper Investigation and research into the Petitioner's claim
attorney Hanns would had brought these facts to the Court's
attention. This is not a utterly harmless error by attorney
Hanns, but a calculated decision by attorney Hanns to
miss Lead the Court (state) in believing that the Petition-
er's claims and State Habeas Petition is Frivolous in
nature.

                              Respectfully

                              Mark Alan Mason
                              #188879
                              Osborn Corr. Inst.
                              335 Bilton Road
                              P.O. Box 100
                              Somers, C.T. 06071

PAGE 15                                                    R.W.