MARK ALAN MASON

V.

WARDEN                               DATE: December 1, 2003


# ARGUMENT OF INEFFECTIVE ASSISTANT OF COUNSEL.

The Petitioner Now puts forth his claims that because of the Newly discovered evidence that the Petitioner attained through Assistant Attorney General Michael J. Lanoue during discovery in civil matter MASON V. ARMSTRONG ET AL. CIVIL No: 3:99cv-1311 (AWC)(TPS) as or about the month of December 2000, (Please see ATTACHED EXHIBIT: G-1 ), that if the Petitioner had such evidence at the time of his criminal proceedings, as the Petitioner had asked his Counsel at the criminal proceedings to attain to establish his defenses, then the outcome at the Petitioner's criminal proceeding would had been different, because the Petitioner would had not entered into a Plea agreement with the State's attorney office in Danbury Superior Court. With the Petitioner's Counsel during his criminal proceedings not attaining said evidence, the Petitioner was denied effective assistence of counsel, and due process to a fair and unbias proceedings.

The Petitioner Now points to the following facts in support of his claim that if the

PAGE 1

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

Petitioner's Defense Counsel during his Criminal Pro-
ceedings would had attained all evidence in support of
the Petitioner's defenses, then the outcome during
the Petitioner's criminal proceedings would had been
__very__ different.

[1] On or about June 8, 1999 the Petitioner was
arraigned in Danbury Superior Court on the charge of
Conn. Gen. Stat. 53a-167c Assault on a Police or Fire Official.
At the arraignment The Petitioner was appointed De-
puty Assistant Public Defender Melissa Cuello. On August
6th, 1999 the Petitioner wrote a letter to Public Defender
Melissa Cuello asking that she attain the following
documents pertaining to the Petitioner's defense claims;

see page 3 paragh 4,
" get Correctional Officer's Owen's medical
records from Danbury hospital concerning this
matter. Also get copies of all institutional
incident reports, medical reports, use of
force reports, witness reports, internal
investigations, and any other related mater-
ials that the Department of Corrections may

PAGE 2

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003

have concerning this incident."

(ATTACHED EXHIBIT: H1)

The Petitioner also asked Public Defender Melissa Cuello to investigate many more aspects of the Petitioner's Defenses, in this same Letter Dated August 6th 1999. On or about August 30, 1999 Assistant Public Defender Melissa Cuell responded to the Petitioner's Letter of August 6th, 1999 stating the following;

page 1, pargh 1;

" I received your recent correspondence. I am concerned about certain information in your Letter, specifically your defense and John Barletta's direct role in it. My office represents Mr. Barletta, and such conflict is in violation of the Rules of Professional Conduct in the State of Connecticut. I have discussed such conflict with Public Defender Robert Field. I feel it is in your best interest to have a Special Public Defender appointed in your case."

( SEE ATTACHED EXHIBIT I1.)

PAGE 3.

MARK ALAD MASON

V.

WARDEN                                          DATE: December 1, 2003


ASSISTANT Public Defender Melissa Cuello also stated at
Page 1 pargh. 4;

> "Your letter mentioned several areas of
> investigation which are necessary in pre-
> poration for your defense. With your per-
> mission, I would be happy to share them
> with Attorney McDonough if he is in fact
> appointed to represent you. Furthermore, as
> we have discussed, many of your requests
> are already pending."
> (ATTACHED EXHIBIT - 1.)


On or about September 27, 1999 at a Court hearing in Dan-
bury Superior Court, Honorable Judge Caroll a white granted
Assistant Public Defender Melissa Cuello's motion to withdraw
because of a conflict of interest and granted the request
for Special Public Defender Dennis McDonough appointed. At
that Court hearing when I spoke with Assistant Public De-
fender Melissa Cuello, I asked her to turn over all the
files she had attained concerning the matter, and to share
with Special Public Defender Dennis McDonough my letter
dated August 6th, 1999 concerning different aspects of my
defense. Assistant Public Defender Melissa Cuello said she

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003


would speak with Special Public Defender Dennis McDonough, about the Petitioner's concerns about his defense expressed in his August 6th 1999 letter.

On September 27, 1999 the Petitioner wrote a letter to Susan Storey Deputy Chief Public Defender in concern of Special Public Defender Dennis McDonough representing the Petitioner's Defense claims. (ATTACHED EXHIBIT: J1 ). Deputy Chief Public Defender Susan O. Storey responded on a about September 29, 1999 stating;

> "After speaking with him, I can assure you that Attorney McDonough is an experienced attorney who is very capable of handling such psychiatric issues if he thinks such issues would be helpful to your case."

(ATTACHED EXHIBIT: K1)


The Petitioner had also wrote Assistant Public Defender Melissa Cuello on August 19, 1999 concerning the Petitioner's Defense Claims. (ATTACHED EXHIBIT: L1 ).

The Petitioner on January 27, 2000 and Feb-February 23, 2000 wrote Special Public Defender Dennis McDonough asking that he send copies of the Petitioner's

PAGE 5.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003


case file in his and Glenn Cooper's possesion to me so
that I could take a active part in my defense. I also
asked Special Public Defender Dennis McDonough to either
call the Petitioner to Court or to call the institution so
that the Petitioner could speak with Special Public De-
fender McDonough about his Defenses and case. (ATTACHED
EXHIBITS: M1 & N1 ). Special Public Defender Dennis Mc-
Donough never responded to the Petitioner letters DATED
January 27, 2000, and February 23, 2000. ON April 5th, 2000, the
Petitioner filed a APPLICATION FOR Freedom OF INFORMA-
tion ACT with Special Public Defender Dennis P. McDon-
ough requesting the following;

> " A complete copy of your File No: 99477,
> pertaining to your Client, Mark Alan MASON,
> case No: A99-082602, or your related File
> in possession, Glenn J. Cooper OF Cooper
> & Kolesnik, P.O. Box 685, Southbury, C.T.
> 06488"
> (SEE ATTACHED EXHIBIT O1)


ON or about April 11, 2000 Special Public Defender Dennis
McDonoug responded to the Petitioner's " February 23, 2000

PAGE 6.

MARK ALAN MASON

V.

WARDEN                                          DATE: December 1, 2003


Letter and the Petitioner's Freedom of Information reque-
st dated April 5th, 2000, stating the following

      Page 1, pargh 1;
      " In reference to your letter of February
      23,2000, please find enclosed, a copy of
      Mr. Cooper's investigation and all of the
      Motions that I have filed on your behalf
      in this matter".
      (see attached EXHIBIT: P1

The Petitioner will also draw to the Court's attention
the following in this same Letter from Special Public
Defender Dennis McDonough;

      Page 2, pargh 1;
      "At this time, I do need you to forward to
      me a letter stating concisely what you be-
      lieve your defense to be in this action" ---

      "Previously, you have provided explanations,
      which are contradictory concerning your
      defense to this case, and I need clarif-

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003


...ication as to whether your defense is
concerning Mr. Barletta being in your cell
or whether the corrections officer instig-
ated the matter."

(SEE ATTACHED EXHIBIT: P1)


This Letter brings to Light that there was two issues
of conflict between the Petitioner and his Defense Coun-
sel Dennis McDonough during the Petitioner's criminal
proceedings;

        [1]. The Petitioner could not get special Public
Defender Dennis McDonough to share the evidence or
documents that the STATE or Defense had collected so
the Petitioner could take a active role in his defense,
and that special Public Defender Dennis McDonough only
gave the Petitioner "some" documents on April 11, 2000 after
the Petitioner filed a Freedom of Information Request.


        [2]. That Special Public Defender Dennis
McDonough had not done a proper investigation into the
Petitioner's defense(s), because as late as April 11, 2000
Special Public Defender Dennis McDonough was "I need
clarification" confused of the Petitioner's defense(ss), and


PAGE 8.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003

this was seven (7) months after Special Public Defender Debois McDonough had been Appointed to represent the Petitioner.

In the Transcript of Plea, dated: November 22, 2000 at Page 3, Lines 17-21 when the Court asked the Petitioner the following;

17: "THE COURT: AND DID you specifically discuss with
18: her all of the evidence the State claims I has to show
19: that you are involved in this matter?

20: Ms. Hutchinson: Your Honor, I discussed some of it,
21: and his prior counsel had discussed the bulk of it."

The Petitioner did not answer this question, but the Petitioner's Counsel, Attorney Hutchinson answered for the Petitioner, stating "his prior counsel had discussed the bulk of it", which from the records of the Court itself shows that this statement could not possible be true, be-on or about June 26, 2000 the Petitioner filed a motion "REQUEST FOR DISMISSAL OF Counsel", stating on page 2, pargns. I & 2, complained about ATTORNEY MCDONOUGH NOT

PAGE 9.                                    A.I.C

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003


properly communicating with the Petitioner or allowing the Petitioner to attaining copies of his case file so the Petitioner could take a active role in his defense. (see ATTACHED EXHIBIT: Q1 ). The Petitioner on April 15, 2000 responded to special Public Defender Dennis McDonough's Request for clarification of defenses. (see ATTACHED EXHIBIT: R1).

The Petitioner has established with the Court that during the Petitioner's criminal proceeding, he asked his Defense Counsels to attain all documents from the Department of Corrections concerning the crime the Petitioner was accused of committing on March 13, 1999 in violation of Conn. Gen. Stat. 53a-167c assault of Police or Fire official, and that his Defense Counsel had not done so, even thou the Petitioner explained both verbally and through written letters that if said documents was attained that it could help prove the Petitioner's innocents. The Petitioner has also established that there was a conflict between the Petitioner and his Defense Counsel Special Public Defender Dennis McDonough, and after this Defense Counsel withdrew and Special Public Defender V. Hutchinson was appointed to represent the Petitioner on a about the month of October 2000, that Special

MARK ALAN MASON

V.

WARDEN                                           DATE: December 1, 2003


Public Defender V. Hutchinson did not do a proper invest-igation into the Petitioner's defense claims, nor did Special Public Defender V. Hutchinson properly advise the Petitioner of all the evidence the state claims it had to convict the Petitioner of the crime the Petitioner was accused of committing on March 13, 1999, Conn. Gen. Stat. 53a-167c Ass-ault of Police or Fire Offical. See TRANSCRIPT OF PLEA, dated: November 22, 2000 at page 3, Lines 17 - 21. STRICKLAND V. WASHINGTON, supra, 466 U.S. 687-91; states;

> "Counsel had a duty to make reasonable investigations or to make a reasonable decision that makes particular investiga-tions unnecessary. In any ineffectiveness case, a particular decision not to invest-igate must be directly assessed for re-asonableness in all circumstances, app-lying a heavy measure of deference to counsel's judgement." (Interal quotation marks omitted.)

The . has shown the Court that Special Public Defender Dennis McDonough did not do a reason-


PAGE 11.

Marc Alan Mason

V.

Warden                                           Date: December 1, 2003

INVESTIGATION INTO the Petitioner's defense claims, and that there was "NO" reasons for Special Public Defender Dennis McDonough or V. Hutchinson NOT to attain documents that was in direct relevance to the Petitioner's guilt or innocents. Federal Rules of evidence, Rule 401, states;

> "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
> (SEE EXHIBIT: S1)

With INCONSISTENCE in the victim's statements (Marc Owens), and the only witness's (Edger Morales) statements, this is very relevant to the action of probability of the Petitioner's guilt or innocents. In the Connecticut Rules of Professional Conduct at Rule 1.3 DILIGENCE states;

> " A lawyer shall act with reasonable diligence and promptness in representing a client."
>
> <u>Commentary</u>
>
> A lawyer should pursue a matter

Mark Alan Mason

V.

Warden                              Date: December 1, 2003


on behalf of a client despite opp-
osition, obstruction or personal incon-
venience to the lawyer, and may take
whatever lawful and ethical measures
are required to vindicate a client's
cause or endeavor."
**(SEE EXHIBIT: O)**

The Petitioner will now put forth evidence
to shows the inconsistence of the victim's (Marc Owens)
and witness (Edger Morales) statements, and the deli-
berate and premeditated decision of the Petitioner's STATE
Habeas Public Defender, Attorney Howard Haims to mislead the
state Court in believing that the Petitioner's STATE Habeas
Petition was frivolous in nature and without merit.


[1]. The Petitioner's STATE Habeas Public De-
Fender Howard Haims on November 20, 2003 filed a Motion
For Permission To withdraw as counsel, with "Mem-
ORANDUM IN SUPPORT OF MOTION FOR PERMISSION TO
WITHDRAW AS COUNSEL" with Forty-one (41) attached Ex-
HiBiTS and the TRANSCRIPT DATED November 22, 2000
Plea / STATE V. MASON and TRANSCRIPT DATED: January 4,
2001, SENTENCING / STATE V. MASON. ATTORNEY HOWARD HAIMS

MARK ALAN MASON

v.

WARDEN                                                    DATE: December 1, 2003


STATES IN HIS MEMORANDUM IN SUPPORT TO withdraw at page 14, paraghs, 2 & 3 the following;

"The undersigned, however, has reviewed Petitioner's Department of Corrections file, which the Petitioner claims would have shed light on defenses to the charge, or would have at least caused a judge or jury to find reasonable doubt respecting his guilt, and the undersigned contends that such claim is without merit.

Petitioner claims that said documents contained inconsistencies, and that those inconsistencies prove his innocence, or, as above, would cause a judge or jury to find reasonable doubt with respect to his guilt."


The Petitioner's sister on or about the month of February of 2003 sent attorney Haims all documents pertaining to the Petitioner's state Habeas Claim, attorney Haims acknowledges this fact in a letter dated April 14, 2003, in which attorney Haims states the following in paragh. 3.

MARK ALAN MASON

V.

WARDEN

DATE: December 2, 2003

"Nor is this office a secretarial service. Quite frankly I resent being sent three hundred pages with instructions to forward the same to you because your sister could not." (SEE ATTACHED EXHIBIT: N)

The Petitioner's sister sent Attorney Hains three hundred pages of documents pretaining to the Petitioner's STATE Habeas Petibion, yet Attached to Attorney Hains memoradum was only Forty-one exhibits from three hundred pages of documents, that the Petitioner's sister sent to Attorney Hains. When Attorney Hains came to Osborn Corr. Inst. on October 25, 2003 Attorney Hains had in his possession all three hundred pages of documents that the Petitioner's sister had sent him. Within these documents that the Petitioner's sister (Sherry Mason) sent Attorney Hains was copies of Four sets of documents submitted either by the victim (Marc Owens), the witness (Edgar Morales) or Connecticut Department of Corrections employees.

[1] Institutional reports submitted by the victim, witness and CORRECTIONS on March 13, 1999.

M.I.C.

MARC ALAN MASON

V.

WARDEN

DATE: December 1, 2003

[2]. STATEMENT OF MARC A. OWENS and Edger Morales submitted to STATE Police OFFICER (Trooper) Michael Dyki #372 on MARCH 13, 1999.

[3] Second set of INSTITUTIONAL reports submitted by VICTIM MARC OWENS, witness (Edger Morales) and Connecticut Department of Corrections employees with memo explaining that the first set of Institutional reports was lost. UNKNOWN DATE.

[4]. SECURITY DIVISION INVESTIGATION, with statements submitted by MARC A. OWENS, and Edger Morales, DATED MAY 5, 1999 MARC A. OWENS, MAY 4. 1999 Edger Morales. INVESTIGATION and statements done by Lieutenant Alberto Saavedra.

ATTORNEY Harris only attached one set of INSTITUTIONAL REPORTS, but also included a INCIDENT summary REPORT from the second set of INSTITUTIONAL reports that

Mark Alan Mason

v.

Warden                                              Date: December 1, 2003


At a later date, after the first set of institutional reports was lost. Attorney Hanus did not include the state police statements, second set of institutional reports or any other statements that showed the inconsistences in the victims, witness, and Department of Corrections employees. The Petitioner will now draw to the Courts attention the inconsistences in the documents that Attorney Hanus did submitt with his memorandum of support to withdraw.


[1]. DISCIPLINARY REPORT - PAGE 1. / EXHIBIT: T 1
     Submitted By: Corr. Officer Owens
     Dated: March 13, 1999 Time 7:00 p.m.


     STATEMENT:
     " I/m Mason tried pushing his way through
     this officer and also attempted to punch
     this reporting officer in the face."


     WITNESS (ES): C/o Morales , C/o Lynch


A.) CLASS 1, 1a and 2 / EXHIBIT: U 1
     INCIDENT SUMMARY

     SUBMITTED BY: LIEUTENANT DENISE BUTLER

Mark alan Mason

V.

Warden

DATE: December 1, 2003

DATED: March 13, 1999

STATEMENTS:

" INMATE MASON BECAME VERBALLY ABUSIVE AND OUTRAGED ATTACKING OFFICER OWENS WHO IN AN ATTEMPT TO RESTRAIN THIS INMATE WAS BITEN UNDER THE LEFTSIDE's CHIN, BENDING HIS RIGHT PINKY Finger---"

B.) STATEMENT OF MARC W. OWENS, MADE TO STATE POLICE OFFICER/TROOPER M. DYK; #372 / EXHIBIT: V1.

SUBMITTED BY: STATE POLICE OFFICER/TROOPER M. DYK; #372
DATED: March 13, 1999   TIME: 1620 hrs /1655 hrs GND

STATEMENTS: Page 2. Parg. 2

" MASON then walked INTO me and then pushed me back with 2 hands. I then pushed MASON back towards the wall and he attempted to take a swing at me. I then grabbed him and attempted to RESTRAIN him. We struggled in the corridor From one side to the other. MASON was then able to raise his head and bit me on the left side of my

A.I.C.

Mark Alan Mason

V.

Warden

Date: December 1, 2003

cheek. The bite broke the skin on my lower left cheek area. During the struggle I also injured my left pinky finger."

C) Class 1, 1a and 2        / ~~EXHIBIT NO. 1~~

Incident Summary

Submitted by: Lieutenant D. Bulter

Dated: March 13, 1999 / wrote later after the first set of Institutional Reports was lost.

Statements:

" The inmate refused; as his verbal aggression became more intense, he approached the Officer and attempted to physically force his way past. When he was unsuccessful, the inmate began to swing at Officer Owens's upper body area."

" While Officer Owens was attempting to restrain Mason, the inmate bit him under the left side of his chin."

Description of injuries:

"Correction Officer Mark Owens: Human

W.I.C.

Mark Alan Mason

V.

Warden

Date: December 1, 2003

bite to left lower chin area and in-
jured right pinky finger."

D). INCIDENT REPORT - PAGE 6 ( summary ) ~~Exhibit D~~
SUBMITTED BY: LIEUTENANT D. Butler
DATED: MARCH 13, 1999    Time: 12:00 p.m.

STATEMENTS:

" IT WAS AT THAT TIME INMATE MASON
WALKED UP TO OFFICER OWENS TRYING TO
PHYSICALLY FORCE HIS WAY THROUGH". WHEN
this ATTEMPT FAILED INMATE MASON PRO-
ceeded TO TAKE a SWING AT OFFICER OWENS
UPPER Body."

" INMATE MASON VIGOROUSLY CHARGED AT
OFFICER OWENS WHO TRIED TO RESTRAIN HIM."

" IN THIS ON ATTEMPT TO RESTRAIN THIS IN-
MATE OFFICER OWENS WAS BITTEN UNDER THE
LEFT SIDE OF HIS CHIN. DURING THIS INCIDENT,
OFFICER OWENS RIGHT PINKY FINGER WAS BENT
BACK IN AN ATTEMPT TO BRING INMATE MASON
DOWN TO THE PRONE POSITION."

A.I.C.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003

E). STATEMENT OF MARC A. OWENS TO INVESTIGATOR
LIEUTENANT A. SAAVEDRA / ~~████████████~~
SUBMITTED BY: LIEUTENANT A. SAAVEDRA/
SECURITY DIVISON
DATED: MAY 5, 1999

STATEMENTS: PAGE 2, LINES:

16) "He then tried to push through me."

18) "Then I/m MASON attempted to push

19) through me again and this (WAS) when I
attempted to restraint him."
PAGE 3, LINES

8) " I felt that I/m MASON

9) bit me on my chin during the struggle. During
the struggle I

10) was bitten on the left side of my chin and
pulled ligaments on my

11) left pinky finger."

The Petitioner now points to the following inconsistences;

The VICTIM, MARC OWENS STATES IN the Disci-
plinary only that "I/m MASON tried pushing his way through

MARK ALAN MASON

V.

WARDEN                                        DATE: December 1, 2003

this officer and also attempted to punch this reporting off-
icer in the face." (See EXHIBIT T1 ). This Disciplinary Report
was written by victim, MARC OWENS at 7:00 p.m., there is
no mention of the Petitioner, (I/m MASON) bitting Officer
Owens. There is also no mention of Officer Owens sustaining
a injury to his pinky finger. In Lieutenant Butler's Incident
summary, submitted on march 13, 1999 (sometime in between 12:00
p.m and 1:15 or 1:30 p.m.), she states; " --- Officer Owens who in
an attempt to restrain this inmate was bited under the Left
side of his chin, bending his right pinky finger ---." (                    ).
Lieutenant Butler knew at the time she submitted this re-
port that not only did victim, MARC Owens sustain a
Human bit to the Left side of his chin, but that victim
MARC Owens also sustained a injury to his right pinky Fin-
ger. Why at or in between the time of 12:00 p.m and 1:30
p.m. Lieutenant Butler mentions these injuries, but in the Dis-
ciplinary submitted at 7:00 p.m. victim MARC Owens mentions
nothing of these injuries? In victim, MARC Owens statement
to Police Officer Michael Dyki #372, submitted march 13, 1999 at
1655 hrs / approx. 4:55 p.m. MARC Owens states, " Mason was then
able to raise his head and bit me on the left side of my
cheek. The bite broke the skin on my lower left cheek
area. During the struggle I also injured my left pinky finger."
The Petitioner points again at 1655 hrs or approx 4:55 p.m.

PAGE 22.

MARK ALAN MASON

V.

WARDEN                                           DATE: December 1, 2003


VICTIM MARC OWENS mentions his injuries of a bite to his left cheek and injured left pinky finger. (~~~~~~~~~~~~~) Again at 7:00p.m VICTIM, MARC OWENS does not mention any of these injuries in the Disciplinary Report he submitted. The Petitioner also draws to the Courts attention, that in Lieutenant BUTLER's INCIDENT SUMMARY REPORTS (EXHIBIT: ~~~~~, ~~EXHIBIT~~ W1, ~~~EXHIBIT X 1~~ ), Lieutenant BUTLER STATES;

~~EXHIBIT~~ U1 : "Bending His Right Pinky Finger"

~~EXHIBIT~~ W1 : "--- and Injured right Pinky Finger"

~~EXHIBIT~~ X 1 : "--- OFFICER OWENS RIGHT Pinky Finger WAS BENT BACK in an ATTEMPT TO Bring INMATE MASON DOWN TO THE PRONE POSITION".


The Petitioner NOW draws the Court's ATTENTION TO VICTIM MARC OWENS STATEMENT concerning his injury to his pinky finger AT EXHIBITS;

~~EXHIBIT~~ W1 : "During the struggle I also injured my left-pinky finger".

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003


~~EXHIBIT: "Y1"~~ :"--- and pulled ligaments on my left pinky finger."


In between the time of 12:00 p.m. and 1:30 p.m. Lieutenant Butler writes in her reports that victim, Marc Owens suffered a injury to his right pinky finger. It must be assumed that when victim, Marc Owens was treated by the medical staff at Garner Corr. Inst., that he was treated for a injury to his right pinky finger, considering the fact that the victim's Use of Force Report, Incident Summary Report, and Medical Incident Report was not included in the documents attained by the Petitioner, through Attorney General (Assistant) M. Lavaie, that when Lieutenant Butler wrote in her reports in between 12:00 p.m. and 1:30 p.m., that the victim, Marc Owens was treated for a injury by Garner Corr. Inst. Medical Staff for a injury to his right pinky finger, only after victim, Marc Owens was treated by Danbury Hospital and made his statement to State Police Officer M. Dyki #372 at or in between 1620 hrs and 1655 hrs did victim, Marc Owens state his left-pinky finger was injured. No time before the victim's, statement to State Police Officer M. Dyki #372 is there a report that the victim suffered a injury to his left pinky finger, only his right pinky finger, and only after being transported to

PAGE 24.

A.I.C.

Mark Alan Mason

V.

Warden

Date: December 1, 2003

Danbury Hospital by another Correctional officer involved in the incident and returning to Garner Corr. Inst. Is it that victim, Marc Owens report it was his left pinky finger. The Court should look upon this and ask; " what pinky finger was injured, where it was injured, and how it was injured, and by whom?"

The Petitioner now draws the Court's attention to the following inconsistence;

[2]. Class 1, 1a, and 2 / ~~Exhibit: W1~~

INCIDENT summary > submitted after first set of institutional reports was lost.

Submitted By: Lieutenant D. Butler

Dated: March 13, 1999  Time: 12:00 p.m / 1:30 p.m.

Statements:

" At this time, Officer Morales exited E-unit, observed the escalating incident, and called a 'Code Orange' for the East Corridor".

A). Incident Report - Page 6 (summary) /

Page 25.

A.I.C

MARK WIAD MASON

V.

WARDEN

DATE: December 1, 2003

EXHIBIT: X1

SUBMITTED By: LIEUTENANT D. BUTLER

DATED: MARCH 13, 1999   Time: 9:00 p.m / 10:00 p.m

STATEMENT:

" OFFicer MORALES EXITING ECHO UNIT AT THIS TIME PROCEEDED DOWN THE HALL IN VIEW OF THE INCIDENT AND called A CODE ORANGE IN THE EAST CORRIDOR VIA RADIO."

" OFFICER MORALES INTERVENE IN THE STR-UGGLE, TO CONTAIN THIS INMATE".

B). STATEMENT OF MARC W. OWENS TO    /EXHIBIT: Y1

STATE POLICE OFFICER. Michael DyKi #372

SUBMITTED By: STATE POLICE OFFICER Michael DyKi #372

DATED: MARCH 13, 1999   Time: 1620 hrs / 1655 hrs

STATEMENTS:

"C/o MORALES then helped me restrain mason and bring him to the ground. we were then able to handcuff MASON."

C). STATEMENT OF Edger Morales TO    /EXHIBIT: Z1

Mark Alan Mason

V.

Warden

Date: December 1, 2003

State Police Officer Michael Dyki #372

DATED: March 13, 1999   Time: 1700 hrs/1725 hrs.

Statements:

" I observed Inmate Mark Mason walking toward myself and C/O Owens - - - "

" I observed Inmate Mason bite C/O Owens in the face."

" I then assisted C/O Owens in restraining Mason and was able to handcuff him. Responding staff then arrived and took Inmate Mason to the segregation unit."

D). Statement of Edger Morales to / ~~███████~~ Lieutenant A. Saavedra

Submitted By: Lieutenant A. Saavedra / Security Division Investigation

DATED: May 4, 1999

Statements:

" As I was returning from E-Unit I stopped and talked with Officer Owens while 6-Unit was going to the chow Hall * "

Mark Alan Mason

V.

Warden

Date: December 1, 2003

"--started to walk back toward me and officer Owens"--

"Both got into a struggle at this point I WAS STANDING APPROXIMATELY 5 FEET AWAY BEHIND C/O Owens."

"Officer Owens radio fell out of his Holster and I called a code Orange."

"I assisted Officer Owens in bringing I/m Mason down to the ground. We were on the floor trying to restrain I/m ⁺ mason when I heard the K-9 coming toward us I/m Mason Kept struggling on the floor with us and when he saw K-9, we were able to secure his arms and legs

"After I/m Mason was restrained, I noticed that Officer Owens was bleeding from his chin, at that point I did not Know that I/m Mason had bitten Officer Owens."

E). STATEMENT OF MARC A. OWENS TO ~~EXHIBIT 13~~

LIEUTENANT A. Saavedra

Submitted By: LIEUTENANT A. SAAVEDRA /

PAGE 28.

Mark Alan Mason

V.

Warden                                          Date: December 1, 2003


SECURITY DIVISON INVESTIGATION
DATED: May 5, 1999


STATEMENTS:

"Once Officer Morales saw this he then
ran toward us by the time he arrived
we were already in a struggle. My radio
fell out of my holster and Officer Morales
picked it up and called a code orange"
"Officer Morales immedialley assisted me
in restraining Ym Mason bringing him down
to the prone position


The Petitioner, now points to the following
inconsistences in said exhibits:

In ▆▆▆▆▆▆▆1▆▆, Lieutenant Butler states
that Officer Morales exited E-unit observed the escalating in-
cident, and called a 'code orange' for the East Corridor, and
again Lieutenant; in ▆▆▆▆▆▆▆1 ), states "Officer Morales exiting
Echo Unit at this time proceeded down the hall in view of the
incident ▆▆ called a code orange in the East Corridor via radio"
but in ▆▆▆▆▆▆▆1▆▆, victim Marc Owens states; "Once Officer
Morales saw this he then ran toward us by the time he,

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

we were already in a struggle" then in EXHIBIT: Z1 ), WITNESS
Edger Morales states, " I observed INMATE MARK MASON walk-
ing toward myself and Y/o Owens ---" also in ~~EXHIBIT~~ ),
Edger Morales, (WITNESS), STATES, " AS I was returning From
E-UNIT I stopped and talked with OFFICER Owens ---" and
again "--- started to walk back toward me and officer
Owens -- ",

The Petitioner points to the FACT that Lieu-
tenant Butler and VICTIM MARC Owens has WITNESS Edger
Morales EXITING E-UNIT or some place in between E-UNIT
and the INCIDENT, but WITNESS Edger Morales puts himself
right at the INCIDENT before it even STARTED. There is no
way WITNESS Edger Morales was EXITING E-UNIT as Lieu-
tenant Butler stated, and be STANDING WITH VICTIM MARC
Owens AS WITNESS Edger Morales STATED. These two spots
has to be approx: thirty-six (36) Feet APART, so there is no way
that there was some kind of CONFUSION between LIEUTENANT
Butler, VICTIM MARC Owens, and WITNESS Edger Morales, because
Edger Morales STATES "I stopped and talked with OFFICER
Owens", Edger Morales also STATES in EXHIBIT:AA ), "--- I
was STANDING Approximately 5 Feet away behind Y/o Owens".
WHY would VICTIM MARC Owens NOT remember WITNESS
Edger Morales speaking with him, and make the STATE-
ment in EXHIBIT:Y1 ), "Once OFFICER Morales saw this he

PAGE 30.                                                              M.J.C.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003


then ran toward us by the time he arrived we WERE already in a struggle"; this statement makes it seem that witness Edger Morales is a distance away, because he ran, but by the time he arrived a struggle already was occurring. This brings now into question witness Edger Morales's creditable, because in ~~EXHIBIT: Z1~~ ), he states the following;

> "I observed INMATE MASON bite C/O Owens in the face";

YET, in ~~EXHIBIT: AA~~ ). Witness Edger Morales states the following;

> "After Mr MASON was RESTRAINED, I noticed that OFFICER Owens was bleeding from his chin, at that point I did NOT know that Mr MASON had bitten Officer Owens."

This puts the creditable of both these statements made by witness Edger Morales in questionable? First, witness Edger Morales states he observed the "INMATE" bite C/O Owens in the face, (statement made to STATE Police OFFICER M. Dyki) then he states he did NOT know that Mr MASON had bitten Officer Owens"(statement made to Lieutenant Saavedra). This can not be, either he lied to the STATE Police OFFICER M.

PAGE 31                                                      M.I.C.

MARK ALAN MASON

V.

WARDEN                                     DATE: December 1, 2003


Dyki, or witness Edger Morales lied to Lieutenant Saav-edra, and since the court, nor the Petitioner can say which statement is true or untrue, both statements must be taken as False statements. If either one of these statements are considered a true statement, then the statements by Lieutenant Butler and victim Marc Owens must be considered untrue, because witness, Edg-er Morales places himself speaking with officer Owens before the struggle between officer Owens and the Pet-itioner; " I was standing approximately 5 feet away behind 40 Owens " (statement by witness Edger Marles in EXHIBIT: AA ), when both Lieutenant Butler," at this time, officer Morales exited E-unit, observed the escalating incident and called a "code orange" for the east corridor"; (see EXHIBIT: BB) and victim Marc Owens, " Once officer Morales saw this he then ran toward us by the time he arr-ived we were already in a struggle", both these state-ments put Edger Morales, may where from 15 feet to 40 feet away from the incident. what statements are true, which are False?, and who ever filed false state-ments should criminal charges be brought against said individual(s)? The Petitioner believes because of these inconsistences the court must put into question all

MARK ALAN MASON

V.

WARDEN                                              DATE: December 1, 2003

STATEMENTS, REPORTS, INCIDENT REPORTS, and other documents submitted by victim, MARC OWENS, Edger Morales (witness), Lieutenant Butler (supervisor on duty), and all other Correctional staff members who submitted reports.

The Petitioner, will only point out a few more small inconsistences;

[3]. CLASS 1, 1a and 2 / ~~EXHIBIT:~~ U1
INCIDENT SUMMARY
SUBMITTED BY: D. BUTLER, LIEUTENANT
DATED: MARCH 13, 1999

STATEMENT:
"USE OF MACE: YES / <u>NO</u>"
"USE OF FORCE: <u>YES</u> / NO"

A). CLASS 1, 1a and 2 / EXHIBIT: W1
INCIDENT SUMMARY
SUBMITTED BY: D. BUTLER, LIEUTENANT
DATED: MARCH 13, 1999 / THIS IS FROM THE second set OF INSTITUTIONAL REPORTS that was SUBMITTED AFTER THE FIRST SET WAS LOST.

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003


STATEMENTS:

"USE OF MACE: YES / NO! "

" USE OF FORCE: " YES / NO "


The PETITIONER points to the "USE OF FORCE" statement, in the FIRST REPORT LIEUTENANT BUTLER admitts that there was FORCE used, but after the first set of INSTITUTIONAL REPORTS was LOST and a second set submitted LIEUTENANT BUTLER states that there was no FORCE used. WHY DID LIEUTENANT BUTLER change this important FACT of this REPORT? This puts both these REPORTS into question of which REPORT is true and accurate? The Court will also take notice of how the story from the FIRST INCIDENT SUMMARY REPORT, (EXHIBIT: U1) changed in details to the second INCIDENT SUMMARY REPORT, (EXHIBIT: W1).


B). VICTIM, MACE OWENS STATEMENT / EXHIBIT: V1
TO STATE POLICE OFFICER  M. DYKI #372
SUBMITTED By: STATE POLICE OFFICER: M. DYKI # 372
DATED: MARCH 13, 1999  TIME: 1620 hrs / 1655 hrs.


STATEMENTS:


PAGE 34.

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

" MASON stated that he was just bringing an article back to the chaple. I advised him to rip out the article and put the rest of the paper back in his unit."

c). VICTIM, MARC OWENS STATEMENT / ~~EXHIBIT~~: Y1

TO LIEUTENANT A. SAAVEDRA

SUBMITTED By: A. SAAVEDRA, LIEUTENANT

SECURITY DIVISION

DATE: May 5, 1999

STATEMENTS:

" I/M MASON stated that he was going to the chapel with an an article. ~~I stated~~. The chapel was closed during that time. I stated to him that nothing was allowed in the chow hall."

D). CLASS 1, 1a, and 2    / ~~EXHIBIT~~: U1

INCIDENT SUMMARY

SUBMITTED BY: D. BUTLER, LIEUTENANT

DATED: March 13, 1999 Time: UNKNOWN

A.S.C.

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

STATEMENTS:

" INMATE MASON, M # 188879 G-UNIT 102 MENTAL HEALTH LEVEL (4) TRANSITIONAL, WAS ASKED BY OFFICER OWENS TO TAKE THE NEWSPAPER WHICH IS UNAUTHORIZED IN THE DINING HALL BACK TO HIS CELL."

E).  CLASS 1, 1a, and 2        /EXHIBIT: W1

INCIDENT SUMMARY

SUBMITTED BY: D. BUTLER, LIEUTENANT

DATED: MARCH 13, 1999, THIS IS FROM THE SECOND SET OF INSTITUTIONAL REPORTS THAT WAS SUBMITTED AFTER THE FIRST SET WAS LOST.

STATEMENTS:

" OFFICER OWENS INSTRUCTED INMATE MASON THAT NEWSPAPERS WERE NOT AUTHORIZED TO LEAVE THE UNIT. INMATE MASON SHARED HIS INTENTION TO BRING A NEWSPAPER ARTICLE TO THE CHAPEL, WHICH WAS CLOSED. OFFICER OWENS INFORMED HIM THAT THIS WAS NOT ALLOWED AND HE MUST RETURN THE NEWSPAPER TO THE UNIT."

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

The Petitioner, draws the Court's attention to victim, MARC OWENS statement to STATE Police Officer M. Dyki, "MASON STATED that he was just bringing an article back to THE Chaple. I advised him to rip out the article and put the rest of the paper back in his unit." This coincides with The Petitioner's statement to Lieutenant A. SAAVECHA, "I told him I was not going to the chow Hall, that I was going to see the Elder. Officer Owens told me that he did not care to take the newspaper back to my block. I told him that there was an article in the paper (news) that I wanted to show the Elder. Officer told me I did not need the whole paper. I told him I'm looking for the article and he told me take the fucking paper back to the block." (~~see Exhibit : B B~~). The Petitioner points to the time VICTIM MARC OWENS made this statement, MARCH 13, 1999 Time: 1620hrs / 1655hrs. Victim MARC OWENS First STATEMENT points out that the Petitioner was NOT going to the Chow Hall, but the chapel as the Petitioner had stated, which would mean that First, the chapel was NOT closed as Lieutenant Butler stated in her incident reports, which also means that LIEUTENANT BUTLER has Falsified reports to mislead the investigation, and Two, That victim, MARC OWENS Filed a report with LIEUTENANT

PAGE 37.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 1, 2003


SAAVEDRA that VICTIM MARC OWENS KNEW WAS NOT true when he STATED, " I, M MASON STATED that he was going to the Chapel with no cuticle. I STATED HAD. THE Chapel was closed during that time. I stated to him that nothing was allowed in the Chow HALL". VICTIM, MARC OWENS made this false STATEMENT to mislead the investigation, because VICTIM MARC OWENS KNEW that IF his STORY of only doing his job "ENForcing INSTITIONAL RULES" was found to be untrue, then why the incident took place would also come into question. The Petitioner also STATES THAT Elder Donald "WHITE WOLF" Gunn of the Chapel services at Garner Corr. INST., submitted a signed affidavit with Glenn S. Cooper of Cooper & Kolesnik, C.P.O. Box 685, Southbury Conn. 06488.S, stating that on March 13, 1999 he called the Petitioner to the Chapel approx. 5 to 10 minutes before the 'Code ORange' in the EAST corridor was called, and that learned the Petitioner was the inmate involved when he saw the Petitioner being escorted by the Chapd. Elder Donald "WHITE WOLF" Gunn, also stated that it was NOT unusual for INMATES To bring articles a other things to the Chapel with them. (Please NOTE THAT THE PETITIONER is only recalling this affidavit statement from memory since ATTORNEY HANIK did NOT include this affidavit in his motion)

PAGE 38                                    A.I.C.

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003


This Affidavit by Elder Donald "WHITEWOLF" Gunn supports the Petitioner's statement that he was going to the Chapel and not the Chowhall, which brings to light why Lieutenant D. Butler nor State Police Officer M. Dyki #372 decided not to interview the two (2) Correctional Officers who was working G-Unit and allowed the Petitioner to leave the Unit with the newspaper, or Elder Donald "WHITE-WOLF" Gunn about if the Petitioner was going or called to the Chapel at the time the incident took place.

The Petitioner, would now like to draw the Court's attention to the crime scene and evidence collected; First, the crime scene was not persevered, Lieutenant Butler states in ~~████████~~), at page 2; "The Protocol for blood exposure cleanup was immediately taken care of by inmate Yerks with Officer Tehan Presence." Why was the crime scene immediately taken without video tape or pictures taken of the area? Why was the protocol for a crime scene not taken and the scene persevered until the State Police Officer could take pictures of the area? Was this because there was blood evidence that could a would had provening the Petitioner's claim of being attacked? Why was not victim Marc Owens and witness Edgar Marsles clothing not taken into

PAGE 39.

A.J.C.

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

AS Evidence? These are important evidence, because if as the Correctional Officers and staff say that the Petitioner suffered a bloody nose while being placed in the prone position then the blood would be in a general area, but If the Petitioner suffered a bloody nose before this time then there would be blood spread over a good area of the hallway where the struggle took place. Also the clothing of victim Marc Owens and Edger Morales would show how much blood the Petitioner had bleed out 1st or during the struggle. If there was a lot of bleeding for a period of three or four minutes, during the struggle It would show on victim Marc Owens clothing.

The Petitioner has brought enough points of inconsistences in the victim statements, witness statements and other statements and documents submitted during the many investigations into this incident to show that If the Petitioner's Defense Counsel(s) would had done a proper investigations into the Petitioner's Defense claims that the outcome would had been different, and most likely the Petitioner would had chosen a different course, instead of entering into a Plea agreement. This also shows this Honorable Court that the Petiti-

PAGE 40

MARK ALAN MASON

V.

WARDEN                                        DATE: December 1, 2003

...ioner's Habeas Corpus Attorney (State) Howard Hains did not do a proper job in representing the Petitioner's claims before the State Habeas Court, and maliciously mislead the State Court into believing that the Petitioner's State Habeas Petition was meritless and frivolous in nature. Attorney Howard Hains misrepresentation of the Petitioner's State Habeas Petition before the State Court must be dealt with fast and strict, to show Attorney Hains that he can not maliciously mislead a Honorable Court into believing false statements, because Attorney Howard Hains did not want to represent the Petitioner's claims before the Court.

          The Petitioner also reserves his right to present anymore inconsistences to the Courts, that the Petitioner may find in the approx. 260 some documents that Attorney Hains did not present to the State Court that the Petitioner's sister (Sherry Mason) sent Attorney Hains back in February of 2003.

          The Petitioner is requesting Testimony and Oral argument in this matter.

                              Respectfully

                              MARK ALAN MASON
                              # 188979
                              Osborn Corr. Inst.
                              335 Bilton Rd.
                              Somers, CT. 06071

A.I.C.                    PAGE 41.

MARK ALAN MASON

V.

WARDEN                                    DATE: December 2, 2003


        I, MARK ALAN MASON, STATES THAT THE
FOREGOING STATEMENTS, ARGUMENTS, EXHIBITS, and INFORMATION
IS TRUE and ACCURATE TO the best of my memory
and Knowledge.


December 2, 2003                RESPECTFULLY
_____
    DATE                       _____
                               MARK ALAN MASON

                               * 188879

                               OSBORN COR. INST.

                               335 BILTON ROAD

                               P.O. BOX 100

                               SOMERS, C.T. 06071


STATE OF CONNECTICUT, COUNTY OF _Tolland_____, duly
WITNESSED and/or SWORN TO before the undersigned.


NOTARY ON THE DATE OF:


December 2, 2003              Darrell Plumica
_____              _____
    DATE                       NOTARY SIGNATURE

MARK ALAN MASON

V.

WARDEN

DATE: December 1, 2003

## CERTIFICATION:

I, hereby certify that a copy of this document was mailed this Following Day ___8th___ of December, 2003 to the Following;

JAMES A. KILLEN

SENIOR ASSISTANT STATE'S ATTORNEY

CIVIL LITIGATION BUREAU

OFFICE OF THE STATE'S ATTORNEY

300 CORPORATE PLACE

ROCKY HILL, CONN. 06067

OFFICE OF STATE'S ATTORNEY

146 WHITE STREET

DANBURY, CONN. 06810

HOWARD J. HAIMS / ATTORNEY AT LAW

169 OAKWOOD AVENUE

WEST HARTFORD, CONN. 06119-2141

DIVISION OF PUBLIC DEFENDER

SERVICES,

HABEAS CORPUS UNIT

2275 SILAS DEANE HIGHWAY

ROCKY HILL, CT 06067

December 8, 2003

DATE

Respectfully

MARK ALAN MASON

# 188879

OSBORN CORR. INST.

335 BILTON ROAD

P.O. BOX 100

SOMERS, C.T. 06071